**EXHIBIT "A"**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JESSICA BLINKHORN, | )<br>) |
| Plaintiff, | )<br>) |
| vs. | ) CIVIL ACTION<br>)<br>) FILE No. 1:19-cv-02273-SDG |
| FRONTERA, INC. and ROANE FAMILY PARTNERSHIP, LP, | )<br>)<br>) |
| Defendants. | ) |

## CONSENT DECREE

This Consent Decree (this "Agreement") is made and entered into by and between Jessica Blinkhorn ("Plaintiff") on the one hand, and Frontera, Inc. ("Frontera") and Roane Family Partnership, LP ("Roane") on the other (together, Frontera and Roane shall be referenced as "Defendants," and Plaintiff and Defendants shall be referenced as the "Parties"). This Agreement is made as a compromise between the Parties for the complete and final settlement of their claims, differences, and causes of action with respect to the dispute described below.

## PREAMBLE

**WHEREAS**, on May 20, 2019, Plaintiff asserted claims for injunctive relief against Defendants as a disabled individual and as an advocate for the disabled community, based upon purported violations of Title III of the Americans with

1

Disabilities Act, 42 U.S.C. 12181, *et seq*. ("ADA") and related claims for relief (the "Action") with regard to the real property located at or about 1495 Chattahoochee Avenue, Atlanta, Georgia 30325, Fulton County Property Appraiser's parcel number 17 0193 LL1265; (the structure situated upon such real property shall be referenced as the "Facility" and the real property such structure is situated upon shall be referenced herein as the "Property"); and

**WHEREAS**, the Parties desire to compromise and fully and finally resolve and settle all actual and potential claims or litigation between them, to avoid the uncertainty, time and expense that would accompany such litigation; and

**WHEREAS**, the Parties have agreed to enter into this Agreement pursuant to which each and every claim and/or cause of action asserted or that could have been asserted by Plaintiff against Defendants shall be fully, forever, and finally released;

**NOW, THEREFORE**, in consideration of the covenants and mutual promises and agreements contained herein, and other valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Attorney's Fees and Costs**

    1.1 The Parties shall execute this Agreement and Plaintiff's Counsel, The Law Office of Craig J. Ehrlich, LLC, shall prepare a Joint Stipulation to Approve Consent Decree and Dismiss with Prejudice ("Joint Stipulation") to be distributed

to all Parties for execution. Within 30 (thirty) days of the entry of an Order granting the Stipulation, Defendants jointly agree to pay attorney's fees and costs of litigation in the amount of $5,750.00 (five thousand seven hundred fifty dollars and no cents) to Plaintiff's counsel, made payable to "The Law Office of Craig J. Ehrlich, LLC IOLTA" and delivered to The Law Office of Craig J. Ehrlich, LLC, 1123 Zonolite Road, N.E., Suite 7-B, Atlanta, Georgia 30306.

    1.2    Upon delivery to Plaintiff's Counsel of the fully executed Agreement, Plaintiff shall promptly file the Joint Stipulation to Approve Consent Decree and to Dismiss with Prejudice, attaching a copy of the fully executed Agreement and proposed order of dismissal with prejudice.

    1.3    Plaintiff agrees to take any and all additional steps required to obtain dismissal of the Action as set forth above. Except as set forth herein, each Party shall be responsible for payment of her or its own litigation expenses, costs and attorneys' fees.

    1.4    Plaintiff and Plaintiff's Counsel acknowledge and agree that they are solely and entirely responsible for the payment and discharge of all federal, state, and local taxes, if any, that may, at any time, be found to be due upon or as a result of the Payment hereunder. Plaintiff and Plaintiff's Counsel, and each of them, expressly acknowledge that Defendants have not made any representations

regarding the tax consequences of any Payment received pursuant to this Agreement.

1.5     The Parties agree that a condition precedent for the validity of this Agreement is the Court's retaining jurisdiction to enforce the Agreement.

**2.      Alterations or Modifications to the Facility and Property**

2.1     The Parties hereto acknowledge and stipulate that Defendants shall modify or alter the items expressly identified by and in the manner specified in "Exhibit 1." The repairs or modifications identified in "Exhibit 1" shall be completed in all respects no later than eighteen (18) months from the entry of the Order.  The time period for completion by Defendants shall be subject to acts of God, force majeure, or events beyond the control of Defendants, such as inability to obtain building or zoning permits, failure of the city/county or state inspectors to make inspections, city/county/state work on adjacent roadways/sidewalks which delay implementation of this Agreement, contractor defaults or work stoppages. In the event of such unforeseen circumstances, the time period for completion of the alterations or modifications in "Exhibit 1" shall be extended by the number of days reasonably attributable to such delay-causing event as long as Defendants provide notice to Plaintiff's Counsel prior to the original completion date set forth above. Either Frontera or Roane may provide this notice.

2.2     Upon completion of the alterations and modifications set forth in

"Exhibit 1," Defendants shall provide written notice by certified or registered mail, or via electronic mail, to Plaintiff's Counsel. Either Frontera or Roane may provide this notice.

2.3 If the modifications or alterations described in "Exhibit 1" conflict with Georgia law, building construction standards, county or city regulations or codes, or any other statute, act, law, rule, regulation, code, standard, or state or local governing body whatsoever, Defendants shall attempt to identify and implement a reasonable alternative solution or variance should a readily achievable one exist. If any such alternative solution is applied by Defendants, Defendants agree to notify Plaintiff's Counsel of the same prior to initiating any such alternative solution. It is a material provision of this Agreement that Plaintiff shall approve any alternative solution(s) prior to its (or their) implementation, and further, Plaintiff's approval of any alternative solution(s) proposed by either Defendant shall not be unreasonably withheld.

2.4 The Parties stipulate that after Plaintiff's Counsel receives notice of the completion of the alterations or modifications described in "Exhibit 1" or after the elapse of the eighteen (18) month time period set forth in Paragraph 2.1 above, whichever is sooner, Plaintiff may inspect the Facility and Property to ensure that Defendants have completed the modifications or alterations described in "Exhibit 1"

Defendants shall provide Plaintiff or her designated representative reasonable access to the Facility and Property to verify completion of the work described in "Exhibit 1." The settlement proceeds set forth in Paragraph 1.1 are deemed to include a $300.00 (three hundred dollars) re-inspection fee to Plaintiff.

2.5 If an inspection contemplated herein reveals that any of the alterations or modifications described in "Exhibit 1" have been performed in a manner that does not materially comply with "Exhibit 1," Plaintiff shall have the right to enforce this Agreement pursuant to Paragraph 3, below.

2.6 It is agreed by the Parties that the modifications set forth in Exhibit "1" represent the maximum readily achievable compliance with the 2010 ADAAG, and upon all of the modifications being completed as set forth in "Exhibit 1," the Facility and Property will be deemed fully compliant with the ADA and 2010 ADAAG pursuant to the readily achievable standard. Further, as Plaintiff, who requires a wheelchair for mobility purposes, filed her Complaint in part as an advocate for the disabled community, and having adequately represented such interests and secured Defendant's agreement herein to make the modifications required pursuant to "Exhibit 1" for the express purpose of making the Facility and Property accessible to the disabled, the Parties stipulate that it is their intent that the foregoing Agreement preclude future litigation concerning the violations that were alleged, or could have

been alleged, in Plaintiff's Complaint as they pertain to the Facility and Property.

**3.     Enforcement Provisions**

If Plaintiff contends that an inspection performed pursuant to Paragraph 2.4 of this Agreement reveals that any of the alterations and/or modifications described in "Exhibit 1" have been performed in a manner that does not materially comply with "Exhibit 1" Plaintiff shall provide notice to Defendants via certified mail at the address listed in Paragraph 7.1 of this Agreement, below. Defendants shall have one hundred and twenty (120) days after receipt of such notice to cure any alleged non-compliant alterations and modifications. If Defendants do not cure the alleged non-compliant alterations or modifications, Plaintiff shall have the right to move this Court to enforce this agreement.

**4.     Compromise**

The Parties agree and acknowledge that this Agreement is the result of a compromise and shall never be construed as an admission of any liability, wrongdoing, or responsibility on the part of the Released Parties (as defined in Paragraph 5.1 below). Defendants expressly deny any such liability, wrongdoing, or responsibility.

**5.     Release Given By Plaintiff in Favor of Defendants**

5.1    In exchange for the good and valuable consideration set forth herein,

Plaintiff and her respective agents, members, successors, assigns, parent entities, subsidiary entities, heirs, officers, predecessors, directors, affiliated persons and/or entities, and anyone claiming by or through them (collectively, the "Releasing Parties"), hereby fully and finally release, acquit, satisfy, and discharge Defendants, and each of their respective agents, predecessors, successors, assigns, heirs, parent entities, subsidiary entities, officers, directors, shareholders, employees, attorneys, affiliated persons or entities, and all current and former tenants or lessees of the Facility and/or Property (collectively, the "Released Parties"), of and from any and all legal or equitable claims, demands, liabilities, debts, judgments, damages, expenses, actions, or causes of action arising under Title III of the ADA and/or any other federal, state, or local law governing access features and policies for persons with disabilities at public accommodations whether before any federal, state, or local agency, court of law, or in any other forum, and any and all claims that could have been alleged in the Action regarding the Facility and/or Property. This release also includes all claims for attorney's fees and costs, expert fees and costs, or any other fee or cost incurred to date, with the exception of (a) the attorney's fees and costs set forth in Paragraph 1.1, above, and (b) any attorney's fees and costs resulting from any future action taken by any of the Parties to enforce the terms of this Agreement.

5.2     As a material inducement for Defendants to enter into this Agreement, Plaintiff represents and warrants that she is not aware of any pending tort, contract, or other legal claims against Defendants, other than the specific claims brought in this Action under Title III of the ADA, which are released under this Agreement.

5.3     Plaintiff represents and warrants that no portion of any of the matters released by this Agreement and no portion of any recovery or settlement to which they might be entitled have been assigned or transferred to any other person, firm, or corporation not a Party to this Agreement, in any manner, including by way of subrogation or operation of law or otherwise.

**6.     Release Given By Defendants in Favor of Plaintiff**

In exchange for the good and valuable consideration set forth herein, Defendants and their respective agents, members, successors, assigns, parent entities, subsidiary entities, heirs, officers, predecessors, directors, affiliated persons and/or entities, and anyone claiming by or through them, hereby fully and finally release, acquit, satisfy, and discharge Plaintiff, her agents, predecessors, successors, assigns, heirs, parent entities, subsidiary entities, officers, directors, shareholders, employees and/or other such affiliated persons or entities of and from any and all legal or equitable claims, demands, liabilities, debts, judgments, damages, expenses, actions, or causes of action arising under any federal, state, or local law,

or under common law, and of and from any and all claims that have been alleged by Defendant, or could have been alleged by Defendant, whether in the Action, or in any other case or in any other forum. This release also includes all claims for attorney's fees and costs, expert fees and costs, or any other fee or cost incurred to date.

**7.     Notice**

7.1    Unless otherwise provided in this Agreement or by law, all notices or other communications required or permitted by this Agreement or by law to be served on or delivered to any Party to this Agreement shall be delivered as follows:

To Plaintiff:

The Law Office of Craig J. Ehrlich, LLC
1123 Zonolite Road, N.E. Suite 7-B
Atlanta, Georgia 30306
Fax: (855) 415-2480
craig@ehrlichlawoffice.com

To Defendants:

William E. Duncan, Jr., Esq.
2637 Peachtree Road N.E. #111
Atlanta, GA 30305
duncan8445@gmail.com

7.2    Any Party may change such address for the purpose of this Paragraph by giving timely written notice of such change to the other Parties to this Agreement in the manner provided in this paragraph.

8.  **Free Will**

The Parties acknowledge that each has had an opportunity to consult with counsel of their own choosing concerning the meaning, import, and legal significance of this Agreement, and that each has done so to the extent desired. In addition, the Parties acknowledge that they each have read this Agreement, as signified by their signatures hereto, and are voluntarily executing the same after having had the opportunity to seek the advice of counsel for the purposes and consideration herein expressed.

9.  **Miscellaneous Terms and Conditions**

9.1   This Agreement contains the complete settlement agreement between the Parties. Any and all prior agreements, representations, negotiations, and understandings between the Parties, oral or written, express or implied, with respect to the subject matter hereof are hereby superseded and merged herein

9.2   This Agreement may be executed in counterparts or by copies transmitted by facsimile or email, all of which shall be given the same force and effect as the original.

9.3   This Agreement may be modified only by a written document signed by all of the Parties. No waiver of this Agreement or of any of the promises, obligations, terms, or conditions hereof shall be valid unless it is written and signed

by the Party against whom the waiver is to be enforced.

      9.4    This Agreement shall be binding upon the Parties hereto, their predecessors, successors, parents, subsidiaries, affiliates, assigns, agents, directors, attorneys, officers, families, heirs, spouses, and employees.

      9.5    If any provision of this Agreement shall be finally determined to be invalid or unenforceable under applicable law by a court of competent jurisdiction, that part shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts of said provision or the remaining provisions of this Agreement.

      9.6    The Parties acknowledge that they have reviewed this Agreement in its entirety and have had a full opportunity to negotiate its terms, and therefore waive all applicable rules of construction that any provision of this Agreement should be construed against its drafter and agree that all provisions of the Agreement shall be construed as a whole, according to the fair meaning of the language used.

      9.7    Plaintiff represents that, other than the Action, she has not filed or authorized the filing of any complaints, charges, or lawsuits against Defendants with any federal, state, or local court, governmental agency, or administrative agency relating to the subject Facilities, and that if, unbeknownst to Plaintiff, such a complaint, charge, or lawsuit has been filed on her behalf, she or it will use her or

its best efforts to cause it immediately to be withdrawn and dismissed with prejudice.

9.8   The parties and their Counsel agree to execute any and all further documents and perform any and all further acts reasonably necessary or useful in carrying out the provisions and purposes of this Agreement.

9.9   In any action or other proceeding to enforce rights under this Agreement, the prevailing Party shall recover from the losing party all attorneys' fees, litigation expenses, and costs.

9.10   The Parties acknowledge that all Recitals and/or "WHEREAS" clauses preceding Paragraph 1 are incorporated as a material part of this Agreement.

9.11   This Agreement is entered into in, and shall be governed, construed and interpreted in accordance with the substantive laws of, the State of Georgia.

[signatures appear on the following page]

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

**"PLAINTIFF"**

_____
Jessica Blinkhorn

Date  12-5-2019

**"FRONTERA"**

_____
Frontera, Inc.

By: _____ (Print Name)

As its: _____ (Title)

Date _____

**"ROANE"**

_____
Roane Family Partnership, LP

By: _____ (Print Name)

As its: _____ (Title)

Date _____

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

**"PLAINTIFF"**

_____
Jessica Blinkhorn

Date _____

**"FRONTERA"**

*Chance Evans, Pres*
_____
Frontera, Inc.

By: **CHANCE EVANS** _____ (Print Name)

As its: **PRES.** _____ (Title)

Date **Dec 7, 2019** _____

**"ROANE"**

_____
Roane Family Partnership, LP

By: _____ (Print Name)

As its: _____ (Title)

Date _____

14

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

**"PLAINTIFF"**

_____
Jessica Blinkhorn

Date _____

**"FRONTERA"**

_____
Frontera, Inc.

By: _____ (Print Name)

As its: _____ (Title)

Date _____

**"ROANE"**

_____
Roane Family Partnership, LP

By: _SPENCER ROANE_ (Print Name)

As its: _PARTNER_ (Title)

Date _12/5/19_

14

Scanned with CamScanner

# EXHIBIT 1

1. The two (2) existing accessible parking spaces on the Property will be eliminated, and two (2) replacement accessible parking spaces complying with section 502 of the 2010 ADAAG standards will be created in the center portion of the main parking lot on the Property, with an access aisle located centrally between them. This area will be resurfaced so that the newly-created spaces and access aisle comply with section 502.4 of the 2010 ADAAG standards. Positioned as such, said accessible parking spaces will be located upon the shortest accessible route to the disabled entrance to the Facility *that is readily achievable*, in compliance with section 208.3.1 of the 2010 ADAAG standards. Further, due to the nature of how vehicles enter and exit the Property, the Parties agree that it is best that no signage pursuant to section 502.6 of the 2010 ADAAG standards be required (specifically, signage would prevent access to the newly created accessible spaces from both sides, and the Parties agree that this promotes accessibility). The newly created parking spaces will be clearly marked with an international sign of disability upon their surfaces.

2. An accessible route leading from the above-described newly-created access aisle to the disabled entrance of the Facility will also be clearly marked, to

alert drivers on the Property of its use as a wheelchair accessible route, and in compliance with section 502.3 of the 2010 ADAAG standards. The ground surfaces of this accessible route shall comply with section 403.2 throughout the entire route leading to the accessible entrance to the Facility.

3. The Parties stipulate that it is not readily achievable to provide disabled individuals with access to main entrance to the Facility, which is located on the second level of the Facility. As a readily achievable alternative, the lower (ground) level entrance (situated in close proximity to the existing disabled accessible parking space and the intended location for the disabled accessible parking space contemplated in Item #1, above) will serve as the disabled accessible entrance. Said entrance shall be modified so that it is in compliance with all applicable provisions of section 404 of the 2010 ADAAG standards.

4. Plaintiff has alleged that the interior of the Facility lacks an accessible route connecting all accessible elements and features within the Facility, in violation of section 206.2.4 of the 2010 ADAAG standards. Specifically, Plaintiff has alleged that the bar area and main dining rooms in the Facility are inaccessible to disabled patrons. The Parties stipulate that due to structural impediments within the Facility, and cost disproportionality, it is not readily achievable to provide disabled access to the bar area and main dining rooms

in the Facility.

5. The men's restroom in the Facility will have the toilet compartment barriers therein removed in order to provide for adequate turning diameter in said restroom, in compliance with section 603.2.1 of the 2010 ADAAG standards.

6. The accessible toilet stall door in the women's restroom in the Facility will be modified so that it is self-closing, in compliance with section 604.8.1.2 of the 2010 ADAAG standards. The coat hook on this door will be relocated within the prescribed vertical reach ranges set forth in section 308.2.1 of the 2010 ADAAG standards.